UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-491-H

PHAT'S BAR & GRILL, INC., et al.                                        PLAINTIFFS

V.

LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT, et al.                                                DEFENDANTS

**MEMORANDUM OPINION**

Plaintiffs, Phat's Bar & Grill, LLC, Bert Williams, Sr. And Bert Williams, Jr., filed this lawsuit against the Louisville Metro Police Department ("Louisville Metro") and numerous of its officers alleging federal and state claims arising out of the search of the Phat's premises, the conduct of the officers during the search, and the arrest and prosecution of both Williams Junior and Senior. Defendants now seek dismissal of many of the claims on the grounds that they are barred by the applicable statute of limitations. Though the complaint describes quite serious allegations; the events in question did take place several years ago. As discussed below, the complaint appears to have been filed well after the statute of limitations had passed as to many of the claims.

I.

The complaint alleges the following facts. Defendants dispute almost all the actions alleged and particularly the characterization of them.

Plaintiffs allege that the entire series of events began on April 9, 2007, when Plaintiffs' counsel, Douglas A. Weaver, met with Louisville Metro Deputy Mayor William Summers to

discuss concerns that the Louisville Metro police had persistently harassed Plaintiffs at their place of business. Several days later, Weaver met with Louisville Metro Chief Robert White, Colonel Phil Turner, Major Robert Johnson, and LMPD's legal representative at the office of Chief White to discuss similar matters.

On April 19, 2007, Defendant LMPD Officer Kevin Smith arrived at Phat's to investigate a "robbery" of an "individual inside." He attempted to enter the premises without a warrant. Ultimately, the complaint alleges Smith shoved his way past Bert Williams, Jr., to gain entry. Smith then arrested Bert Williams, Jr., and charged him with obstruction of governmental operations, terroristic threatening, disorderly conduct, and alcohol intoxication. The complaint alleges that Smith falsified information on the Uniform Citation issued in conjunction with Plaintiff's arrest. The Jefferson County Attorney's office ultimately dismissed all charges against Bert Williams, Jr., except obstruction of governmental operations.

The prosecution of Bert Williams, Jr. lasted over two years. The County Attorney's office tried to convince him to stipulate to probable cause for his arrest. The case went to trial in June 2009. A security video from the club clearly showed that Plaintiff did not obstruct Officer Smith at all. This video was played for a jury at trial on the obstruction of governmental operations charge. On June 9, 2009, Bert Williams, Jr., was acquitted of the remaining charge.

While these charges were pending, the complaint alleges, certain other Defendants initiated an investigation nicknamed "Operation Purple Rain," the purpose of which was to close Phat's and to effect the prosecution of Bert Williams, Jr. On April 18, 2008, Detective Timothy Murphy executed an affidavit and obtained a search warrant for the search of and seizure of certain property from Phat's. The affidavit contained false information and lacked probable

cause for the arrest of either of the named Plaintiffs.

On Sunday, April 20, 2008, LMPD's Special Weapons and Tactics Team ("SWATT") raided Phat's. During the course of the raid certain LMPD officers allegedly improperly and unnecessarily physically and verbally assaulted patrons and club employees and used shouldered rifles to hold them at gunpoint for an unreasonable period of time. Some of the employees were restrained unnecessarily, in an unreasonable manner, for an unreasonable period of time, while totally or partially nude. During the course of the raid, Defendants also seized certain cash believed to be in excess of $30,000 that belonged to Plaintiffs.

During the raid, Defendants attempted to shut down or otherwise tamper with the security cameras in the club so as to conceal their illegal actions, to include but not be limited to theft of property and the planting of inculpating "evidence." Defendants also falsely arrested Bert Williams, Sr., and falsely charged him with crimes that Defendants knew and should have known he did not commit. Defendants also conducted, unnecessarily and without probable cause, separate searches of Plaintiffs' residences.

On June 29, 2009, Defendants presented the false charges against Bert Williams, Sr. to a Jefferson County Grand Jury. The action was initiated without probable cause, intentionally and maliciously, and with the knowledge by the complaining witnesses that all or some of the charges were false. On or about June 30, 2009, the Grand Jury returned a "no true bill" on all counts against Bert Williams, Sr.

On June 7,2010, Plaintiff's filed this lawsuit in Jefferson Circuit Court. On July 14, 2010, Defendants removed to federal court. The complaint alleges the following claims against Louisville Metro, Kevin Smith, Tim Murphy, Blaine Kohl, Francis Gootee, William Pearson and

Brian Wright generally: (1) false arrest and malicious prosecution; (2) conversion; (3) intentional infliction of emotional distress; (4) liability under KRS 446.070; (5) tortious interference with business relations; and (6) constitutional violations under 42 U.S.C. § 1983 for unreasonable search and seizure, due process violations, violations of equal protection, excessive force, unconstitutional policies and unconstitutional training.

II.

Most of the claims in this case are subject to dismissal based upon straightforward analysis.

Plaintiffs' state law claims against Louisville Metro are barred by the doctrine of sovereign immunity. *Jewish Hospital Healthcare Services, Inc. v. Louisville/Jefferson County Metro Government*, 270 S.W.3d 904, 907 (Ky. App. 2008), *Hamblen ex rel. Byars v. Kentucky Cabinet for Health and Family Services*, 322 S.W.3d 511, 515 (Ky. App. 2010). No statutory waiver is present. Consequently, Louisville Metro must defend and indemnify its employees, but is not subject to direct liability.

All Plaintiffs' federal claims for due process violations, false arrest, excessive force and unreasonable search and seizure under 42 U.S.C. § 1983 are barred by the applicable one year statute of limitations. *See* KRS 413.140(1)(a); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). The latest of the events giving rise to these claims took place on June 30, 2009, that being the return of the "no true bill." Plaintiffs did not file their complaint until June 7, 2010. Clearly, more than a year passed between the arrests, searches, use of force, the last attempted indictment and the filing of the lawsuit. Moreover, the Court finds no basis for extending the accrual date of the actions or for tolling the limitations period.

4

To make sure that it understood all of Plaintiffs' arguments, the Court held a conference to discuss the issues at some length. Plaintiffs argued that the existence of a conspiracy and the actions of police officers to conceal certain videotape and other evidence created an equitable tolling of the statute. Federal law governs the accrual date of these claims. *Eidson v. Tenn. Dep't. of Children's Services*, 510 F.3d 631, 635 (6th Cir. 2007). The Sixth Circuit has repeatedly held that the statute accrues when one knows or has reason to know of the injury which is the basis for the action. *Id.* Here, Plaintiffs had plenty of knowledge about their potential injury and their claims. They were certainly altered to pursue their claims.

Plaintiffs also seem to argue that the alleged conspiracy constitutes a continuing violation for statute of limitations purposes. A continuing violation tolls the statute of limitations under the theory that a cause of action accrues with each violation. The Sixth Circuit employs a three-part test for determining whether a continuing violation exists. "First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern." *Tolbert v. Ohio DOT*, 172 F.3d 934, 940 (6th Cir. 1999). "Second, injury to the plaintiff must continue to accrue after that event." *Id*. "Finally, further injury to the plaintiffs must have been avoidable if the defendants had at any time ceased their wrongful conduct." *Id*. The Court pointed out, "[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id*. "Passive inaction...does not support a continuing violation theory." *Id*. Here, Plaintiffs cannot meet any of the three parts of the test.

Finally, Plaintiffs' direct constitutional claims and their § 1985 conspiracy claims cannot proceed. Here, individual constitutional claims must proceed through § 1983, which Plaintiffs have done. Section 1985 was established for claims based upon the denial of constitutional

5

rights to a group of persons based upon their race. In addition, subsection (3) does not create independent substantive rights, but does allow conspiracy claims for designated class-based violations. Plaintiffs have not made any factual allegations to support such claims. Moreover, the one-year statute would bar the conspiracy claim based upon the allegations of the complaint. By the time of the two arrests and searches, Plaintiffs had plenty of evidence to make their claims, yet they delayed more than a year in filing this complaint.

Plaintiffs' claim for violation of the separation of powers is one with which the Court is unfamiliar. The Court can find no federal authority for asserting such a claim. Plaintiffs have not responded with any authority which suggests such a cause of action might exist.

The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record