UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-00491-H

PHAT'S BAR & GRILL, INC., et al.                                    PLAINTIFFS

V.

LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT, et al.                                         DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Phat's Bar & Grill, LLC, Bert Williams, Sr., and Bert Williams, Jr. (collectively, "Plaintiffs"), filed this lawsuit against the Louisville-Jefferson County Metropolitan Government ("Louisville Metro") and twenty-four Louisville Metro Police Department Officers (collectively, "Police Officers") asserting several state and federal law claims in connection with the arrests of both Williams, Jr. and Williams, Sr. and the police raids of Phat's Bar & Grill.  In two previous orders, this Court has dismissed most of Plaintiffs' claims on statute of limitations grounds or for insufficiency of evidence to support the claim.[1]  Plaintiffs now move for reconsideration of the two prior orders.

Because the Court's previous order addressing these important issues did not contain extensive discussion, the Court believes that further consideration and analysis is appropriate.

I.

On two occasions in early April 2007, Plaintiffs' counsel met with various representatives of Louisville Metro, including the Louisville Deputy Mayor and Louisville Metro Police Chief to

---

[1] What remains are Plaintiffs' state and federal law claims for malicious prosecution against all defendants and for intentional interference with business relations against all Police Officers except Officer Kevin Smith.

discuss the ongoing and deleterious relationship that had arisen between Plaintiffs and Louisville law enforcement officers. Days later, on April 19, 2007, responding to a phone call that an individual had been robbed and assaulted in Phat's Bar & Grill, Police Officer Kevin Smith sought entrance to Phat's without a warrant. Williams, Jr. met Officer Smith and other police officers accompanying Officer Smith at the entrance of his establishment and questioned the police about their motive for this visit. Officer Smith arrested Williams, Jr. for obstruction of governmental operations, terroristic threatening, disorderly conduct, and public alcohol intoxication. The Jefferson County Attorney's Office dropped all charges except the obstruction charge. Two years later, a jury returned a verdict of not guilty on the obstruction charge against Williams, Jr.

On April 20, 2008, Louisville Metro Police Department Special Weapons and Tactics Team raided Phat's Bar & Grill. In doing so, Plaintiffs allege that the Police Officers infringed on their rights in a number of ways, including restraining employees for an unreasonable period of time while they were partially or totally nude, attempting to tamper with and shut down security cameras, and seizing $30,000 and other items that were not accounted for on police itemization documentation. During the course of the raid, the police officers arrested Williams, Sr. on charges of illegal use or possession of drug paraphernalia, evasion of tax payments, and tampering with physical evidence. On June 30, 2009, the Grand Jury returned a "No True Bill" on all counts.

Prior to the Grand Jury determination, on May 13, 2009, Phat's Bar & Grill voluntarily surrendered its liquor license at a Kentucky Alcohol Beverage Control Board meeting. Plaintiffs contend they had to do so to avoid the often permanent negative consequences of license revocation. As a result, Phat's Bar & Grill discontinued its operations. Plaintiffs allege that Louisville Metro Police Department sought to achieve this end through the raids and investigations it conducted on

Phat's Bar & Grill over the previous few years.

On June 7, 2010, Plaintiffs filed this suit in Jefferson Circuit Court. Defendants appropriately removed the case to this Court. Shortly thereafter, Louisville Metro filed a Motion to Dismiss. In its February 8, 2011 Order ("February Order"), this Court dismissed the following claims:

(1) All state law claims against Louisville Metro, except for malicious prosecution, and

(2) All federal law claims against all Defendants, including for false arrest, under the United States Constitution, and pursuant to § 1983 and § 1985, except for malicious prosecution.

Except for the Separation of Powers claim, dismissed as non-cognizable, the Court dismissed each of the federal claims on statute of limitations grounds. Subsequently, Officer Kevin Smith moved to dismiss the remaining claims against him. In its September 23, 2011 Order ("September Order"), this Court dismissed the following claims:

(1) State law conversion and intentional infliction of emotional distress against all defendants,

(2) State law intentional interference with business relations against Smith only, and

(3) State law claims under KRS 446.070 against all defendants.

The Court dismissed the conversion and KRS 446.070 claims on statute of limitations grounds. As a result of the February and September orders ("the Orders"), the only claims remaining in this action are malicious prosecution under both state and federal law against all defendants and intentional interference with a business relationship against the Police Officers except Kevin Smith.

On September 13, 2012, Plaintiff moved for reconsideration of the rulings of dismissal upon those claims dismissed as time-barred, because the "continuing violations" doctrine tolls the statute of limitations for these claims.[2]

## II.

Plaintiffs do not assert authority upon which their Motion for Reconsideration is brought. The Federal Rules of Civil Procedure do not contemplate a motion to reconsider, but "[d]istrict courts possess the authority and discretion to reconsider and modify interlocutory judgments any time before final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 952 (6th Cir. 2004). Courts disagree as to whether this authority derives from the common law or the federal rules, but this Court finds that the Federal Rules do provide the necessary support. *See, id.* at 959 ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment.")

The Sixth Circuit has validated a motion to reconsider under Fed. R. Civ. P. 54(b). *See Rodriguez*, 89 F. App'x at 959 ("Although we agree that the authority for hearing such motions [to reconsider] has a common law basis, we find additional support in [Rule] 54(b)."). Pursuant to Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). Some claims remain at this stage of the litigation. Accordingly, the Court concludes that it can consider a Motion for Reconsideration under Rule 54(b).

---

[2]Various Defendants have moved for summary judgment on the other remaining claims. These motions are fully briefed and the Court will consider each in due course.

III.

Courts will reconsider interlocutory orders under Rule 54(b) "as justice requires" if "there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959. Because Plaintiffs do not assert that any change of law affects the legal sufficiency of the Orders and have not presented any new evidence[3], the Court must examine whether the Orders were a product of clear error or resulted in manifest injustice.

A.

Plaintiffs point to the February Order dismissing claims as time-barred under the appropriate statute of limitations, which specifically denied any applicability of the continuing violations doctrine, as clear error. Because the September Order failed to address the continuing violations doctrine, Plaintiffs assert that Order is also erroneous. In the February Order, this Court outlined the Sixth Circuit three-part test for a continuing violation, and held that "[h]ere, Plaintiffs cannot meet any of the three parts of the test." While the Court did not find it necessary to delve into a deeper analysis of this test at the time, the Court will do so now to further explain why Defendants' actions do not constitute a continuing violation under federal law as to the § 1983 claims and under Kentucky law as to the conversion and KRS 446.070 claims.[4]

---

[3] "To constitute 'newly discovered evidence,' the evidence must have been previously unavailable." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 835 (6th Cir. 1999)(holding that certain evidence was not new, because although the evidence at issue did not exist prior to the District Court's Order, "it was certainly within [party's] power and control"). The evidence presented in Plaintiffs' motion cannot be considered new evidence, because the evidence was either already within Plaintiffs' possession or available to Plaintiffs at the time these Orders were handed down.

[4] In their Motion, Plaintiffs assert that three categories of claims are entitled to tolling under the continuing violation doctrine: 1) § 1983 claims, 2) conversion, and 3) liability under KRS 446.070. "The date on which a statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007). However, the Court will apply the Kentucky continuing violation doctrine to the state law claims. *See Tucker v. City of Princeton, Ky.*, 2010 WL 2773390, at *8 (W.D. Ky. July 13, 2010) (analyzing the Kentucky variation of the continuing violation doctrine in federal court when deciding whether to toll the five-year

Plaintiffs seek relief on a theory that the Defendants' various actions over the years are components of a larger scheme designed to injure Plaintiffs, which Plaintiffs contend are continuing violations of the law. Plaintiffs claim the date of the last overt unlawful act was June 9, 2009, when Police Officer Smith allegedly perjured himself at Williams, Sr.'s trial on obstruction charges. All prior actions that are sufficiently linked to this last overt act should be considered part of one ongoing unlawful act, such that the statute of limitations does not bar claims accruing prior to the time when the statute of limitations began to run. Therefore, statutes of limitations would not bar any claims brought in the Complaint filed on June 7, 2010.

The continuing violation doctrine preserves claims otherwise time-barred where the plaintiffs show a continuous and ongoing violation of their rights. *Phillips v. Cohen*, 3 F. App'x 212, 218 (6th Cir. 2001). The Sixth Circuit recognizes two types of continuing violations, "those alleging serial violations and those identified with a longstanding and demonstrable policy of discrimination." *Sharpe v. Cureton*, 319 F.3d 259, 288 (6th Cir. 2003). The continuing violation doctrine is a narrow exception to the statute of limitations rule, and courts are hesitant to apply it outside the Title VII context. *Id.* at 267. Additionally, federal courts rarely apply the continuing violation theory to the § 1983 context. *Id.* This is a result of context. Facts surrounding a discrimination claim are uniquely suited to a continuing violation. A discriminatory policy often has a constant and ongoing discriminatory effect on those who suffer under the policy, whereas other constitutional violations are often complete and claims therefor fully accrue at the time the alleged unlawful act occurs and the injury is endured, even though the violations may be connected to other violations.

---

statute of limitations applied to those claims brought under the Kentucky Civil Rights Act). Therefore, the Court will consider whether the continuing violation doctrine applies to the § 1983 claims under the federal construction of the doctrine and to the conversion and KRS 446.070 claims under the Kentucky construction.

The Sixth Circuit three-part test for determining whether a continuing violation exists is as follows:

> First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern. . . . Second, injury to the plaintiff must continue to accrue after the event. Finally, further injury to the plaintiffs must have been avoidable if the defendants had at any time ceased their wrongful conduct.

*Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999). In sum, the acts constituting the continuing violation cannot be discrete acts or merely "continual ill effects from an original violation." *Eidson*, 510 F.3d at 635. The acts comprising and supporting the claims *sub judice* do not constitute continued wrongful conduct as imagined under this test. Rather, they constitute various discrete acts with a corresponding series of discrete injuries. The continuing violation test was not designed to elongate the statute of limitations in such circumstances.

Kentucky law also recognizes the doctrine of continuing violations, analyzed as an equitable doctrine under a multi-factored test, but Kentucky courts have traditionally only applied the doctrine in employment discrimination contexts. *See Ammerman v. Bd. of Educ. of Nicholas Cnty.*, 30 S.W.3d 793, 798-99 (Ky. 2000); *Leonard v. Corr. Cabinet*, 828 S.W.2d 668, 670-72 (Ky. Ct. App. 1992). Courts construing Kentucky law look to three specific characteristics of the alleged unlawful acts to determine whether they constitute a continuing violation: 1) acts involving the same type of discrimination; 2) acts that are recurring and not isolated; and 3) acts having "the degree of permanence which should trigger an employee's awareness of the duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate." *Ammerman*, 30 S.W.3d at 798-99. The second factor, measuring frequency, is the most important. *Id.* The Kentucky continuing violation doctrine does not apply to unlawful actions that are separate,

distinct and discrete. *Leonard*, 828 S.W.2d at 670. As an example of the difference between a discrete act and a continuing violation, the *Leonard* court compared a discriminatory discharge with a policy of paying women less than men. *Id.*

The circumstances supporting the claims here do involve discrete acts, except that Plaintiffs allege a series of them. The first raid led to Williams, Jr.'s arrest. True, the raid may have precipitated a second raid by generating some evidence to support a second raid. However, the injuries resulting from the second raid, a separate and distinct act, are likewise separate and distinct. More importantly, these acts comprised the potential elements of the alleged claims. No additional relevant acts were necessary for the claim to accrue. These circumstances do not meet the standard to apply the continuing violation tolling doctrine.

B.

The Court also does not believe that this outcome manifestly unjust. The principal actions that allegedly imperiled Plaintiffs occurred in April of 2008 and April of 2009. Plaintiffs were fully aware of their injuries at the time of the alleged unlawful acts or shortly thereafter, yet delayed in filing this lawsuit until June of 2010. Statutes of limitations are designed to grant reprieve to defendants and ensure the efficient functioning of the justice system. Plaintiffs filed their Complaint well outside the statutes of limitations periods under both state and federal law, and therefore, no injustice will be served by the decision to enforce these laws.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Reconsideration is DENIED.

cc: Counsel of Record