UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-00491-H

PHAT'S BAR & GRILL, et al.,                                    PLAINTIFFS

V.

LOUISVILLE JEFFERSON COUNTY
METRO GOVERNMENT, et al.,                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Bert Williams, Jr. and Bert Williams, Sr., sued a number of defendants, including Louisville Jefferson County Metro Government ("Louisville Metro") and more than twenty Louisville Metro police officers (collectively, "Defendants") over a series of raids and arrests occurring at or near their business, Plaintiff Phat's Bar & Grill ("Phat's"). A number of dispositive motions are currently pending. This memorandum begins the process of addressing each motion in due course.

One of the more significant motions is that of Officer Kevin Smith for summary judgment. Prior to filing this motion, this Court dismissed all claims against Officer Smith with the exception of malicious prosecution under both state and federal law. In his instant motion, Officer Smith seeks dismissal of the malicious prosecution claims on qualified immunity grounds or for Plaintiffs' failure to prove the elements of the tort of malicious prosecution under both federal and state law. Both of these issues involve many interrelated disputed facts as well as serious questions of law. For the reasons that follow, the Court will deny Officer Smith's Motion for Summary Judgment.

I.

Although Plaintiffs allege that all Defendants committed a number of unlawful acts over a period of time, the factual scope of the present motion is limited to the arrest and subsequent prosecution of Williams, Jr., because Officer Smith was only involved in this portion of the alleged illicit activity.

On April 19, 2007, Officer Smith arrested Williams, Jr. at Phat's. Officer Smith and Williams, Jr. offer significantly different accounts of events the night of the arrest. The following, however, is undisputed: Louisville Metro Police received a 911 phone call early in the morning on April 19, 2007 from a woman claiming an assault and robbery inside Phat's. Responding to the call, Officer Smith and his partner arrived at Phat's around 4:30 am, knocked on its door and eventually entered. Once inside, he asked patrons twice whether anyone inside needed police assistance. No one answered "yes." He then went back to the entrance where he requested that Williams, Jr. hand over his identification. Moments later, Officer Smith arrested Williams, Jr. on four charges: (1) Obstructing Governmental Operations, (2) Terroristic Threatening, (3) Alcohol Intoxication, and (4) Disorderly Conduct. He then placed Williams, Jr. in the backseat of his police car and drove off towards the police station.

The other details of the event are disputed. Officer Smith says that Williams, Jr. specifically denied him access to Phat's, both in orally refusing and in physically blocking the entrance way. He says that these actions prevented his ability to investigate the 911 call. Officer Smith then says that in his initial discussions at Phat's doorway, Williams, Jr. was uncooperative, hostile and verbally threatening. Officer Smith says that he remained hostile throughout their interaction. Officer Smith, in his testimony provided at Williams, Jr.'s subsequent trial, stated that he was

concerned about the woman who made the 911 phone call and sought entry to ensure her safety.

In his motion, Officer Smith claims that both a denial of access to Phat's and Williams, Jr.'s otherwise uncooperative behavior led to his arrest. The otherwise uncooperative behavior in part refers to Officer Smith's request for Williams, Jr.'s identification, which Officer Smith claims Williams, Jr. refused to provide absent significant pressure from him and his partner.

Williams, Jr.'s account of this night is different in a number of important ways. He says that when Officer Smith first arrived at Phat's, the door was properly locked because business operations were closed. When Williams, Jr. came to the door, Officer Smith immediately began questioning him about his failure to change the deadbolt lock. According to Williams, Jr., Officer Smith had visited Phat's in the recent past over other concerns, and had specifically commented about this lock. Moving on from this topic, Williams, Jr. says that he explained the context for the 911 call and told Officer Smith that the alleged victim had left the building.

Williams, Jr. asserts that he had recently consulted with his attorney at the time, Douglas Weaver, about his rights when the police came to Phat's. According to Williams, Jr., his attorney informed him that he did not have to allow the police entrance unless the police had probable cause. Because the alleged victim was no longer present, when Officer Smith asked to look around, Williams, Jr. objected. Nevertheless, Williams, Jr. contends that Officer Smith shoved him aside, and made a perfunctory investigation regarding the phone call. Although Phat's is a multiple-storied establishment and several people remained in the building at the time, Officer Smith conducted an investigation in around twenty seconds. Accordingly, Williams, Jr. claims the 911 call was pretext for gaining entry to Phat's.

Williams, Jr. then claims that when he and Officer Smith met again in the entranceway,

Officer Smith requested his identification. When Williams, Jr. inquired into the purpose, Officer Smith became hostile. Williams, Jr. did hand over his identification to Officer Smith's partner. However, Officer Smith forced Williams, Jr. to turn around in the doorway and put his hands behind his back, and then arrested him.

Officer Smith's uniform citation says that he drove Williams, Jr. to the police station. However, it is unclear from the record exactly what happened immediately thereafter. On the citation, Officer Smith alleged the four charges listed above and provided several statements explaining the circumstances behind the arrest. At some later time, three of the four charges were dropped. Williams, Jr. claims that the prosecutors would not drop the final charge at the insistence of Officer Smith, who was present at most of the meetings between him and prosecutors, unless Williams, Jr. stipulated to probable cause. Nevertheless, Williams, Jr. refused to stipulate to probable cause. The Jefferson County Attorney's Office prosecuted Williams, Jr. on the remaining charge for Obstructing Governmental Functions. Nearly two years later, a jury acquitted Williams, Jr. of the charge.

In the briefs on this motion, all parties refer to the following three sets of videos in the record to support their accounts of the events that transpired on April 19, 2007: (1) videos taken from Phat's security system, (2) a video of the arrest taken by one of Williams, Jr.'s employees, and (3) videos of the underlying state court criminal prosecution at which both Williams, Jr. and Officer Smith testified. The security videos do not contain audio of the conversations that took place between Officer Smith and Williams, Jr., so it is unclear from those videos the true nature and content of the encounter.

The only claims remaining against Officer Smith are for malicious prosecution under both state and federal law. He moves for summary judgment on grounds that he is entitled to qualified immunity and that Plaintiffs have failed to show that genuine issues of material fact exist for both the state and federal law malicious prosecution claims. Kentucky and federal law as to both qualified immunity and malicious prosecution are distinct in important ways, so the Court will analyze the federal and state law claims separately. Under this framework, the Court will resolve both the qualified immunity and summary judgment issues.

II.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(c). The moving party bears the burden of proof to show that there is an absence of evidence to prove the nonmoving party's case. *Id*. at 325. Only when moving party shows that the record, taken as a whole, could not support the trier of fact finding for the nonmoving party, will the motion for summary judgment be sustained. *Matsushita Electric Indus. Co., LTD. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To counter this, the nonmoving party must produce evidence that is sufficient to require submission of the issue to the jury. *Id.* The Court holds that the Plaintiffs have achieved this requirement.

III.

Under federal law, "qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Causey v. City*

*of Bay City*, 442 F.3d 524, 528 (6th Cir. 2006)(quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005)). The Sixth Circuit applies a two-step analysis to determine whether a government official is entitled to it. First, the official must have violated a constitutional right, and second, that right must have been clearly established. *King v. Ambs*, 519 F.3d 607, 612 (6th Cir. 2008). To determine whether Officer Smith violated Williams, Jr.'s constitutional rights, the Court will analyze the malicious prosecution claim as a Fourth Amendment violation under 42 U.S.C. § 1983. *See Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003) (recognizing "a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment").

The Sixth Circuit recognizes that a malicious prosecution claim under the Fourth Amendment provides a cause of action for damages caused by "wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006). The Circuit has identified the following elements to maintain such an action:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)(internal citations and quotations omitted). The Sixth Circuit does not require proof of malice. However, to be successful on a malicious prosecution claim, the Plaintiff bears the burden of proof. *Id.*

Both parties seem to concede that the criminal charges were initiated against Williams, Jr. and were resolved in his favor by dismissal or acquittal. Thus, the remaining questions are (1) whether Defendant made, influenced or participated in the decision to prosecute; (2) whether Officer

Smith had probable cause to arrest and prosecute; and (3) whether Williams, Jr. suffered a deprivation of liberty distinct from the initial seizure. Because Defendant Smith would succeed on his summary judgment motion if he disproves any one of these essential elements, the Court will examine each element in turn. *Celotex Corp.*, 477 U.S. at 323 (stating that "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

A.

The seminal Sixth Circuit case discussing the elements of a federal malicious prosecution claim also explained that "very little case law [exists] discussing precisely what role an investigating officer must play in initiating a prosecution such that liability for malicious prosecution is warranted, but . . . the fact that they did not *make* the decision to prosecute does not per se absolve them from liability." *Sykes*, 625 F.3d at 311. The *Sykes* Court stated that the term "participated" should be construed to mean "aided", so that "[t]o be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Sykes*, 625 F.3d at 309 n.5. The Sixth Circuit has not provided any further explanation.

Officer Smith argues that the Jefferson County Attorney made the decision to prosecute Williams, Jr. and that he did not influence this decision. However, "[i]f police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded." *Sykes*, 625 F.3d at 318 (quoting *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988)).

Here, it is actually unclear from the record if and to what extent Officer Smith pressured the County Attorney's Office to prosecute Williams, Jr. However, Plaintiffs assert that Williams, Jr. refused to stipulate to probable cause, and at Officer Smith's insistence, the County Attorney's Office decided to pursue prosecution due to this refusal. Plaintiffs support this assertion with evidence that Officer Smith was present at some of the meetings between the prosecutors and Williams, Jr. and his counsel, and contend that Officer Smith's presence at the meetings suggest that he aided in the prosecution's decisions. Moreover, Officer Smith testified on behalf of the prosecution in Williams, Jr.'s criminal trial, the only testifying witness the prosecution put forth. From these facts, the Court concludes that a reasonable juror could conclude that Officer Smith participated in the decision to prosecute.

Importantly, Plaintiffs could also satisfy this element by showing that the officer presented false information to the prosecuting authorities. *Id.* at 312. In such a circumstance, the plaintiff must provide evidence that the officer "(1) stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the alleged false or omitted information was material to the finding of probable cause." *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006). The Court concludes that factual disputes remain whether Officer Smith deliberately falsified information upon which the prosecutor allegedly relied to prosecute Williams, Jr. According to Officer Smith's Citation, Williams, Jr. told the police officers that they could not enter the premises. Williams, Jr. claims that he was just asserting his property rights. Officer Smith characterized Williams, Jr. as increasingly aggressive, exhibiting hostile behavior and launching verbal threats. Finally, Officer Smith stated that he smelled alcohol on Williams, Jr.'s breath. All of this Williams, Jr. vehemently denies. The determination of whether Officer Smith made either deliberate

falsehoods or statements with reckless disregard for the truth, and whether these statements were material to the prosecution, depend on whether the factfinder believes Officer Smith's or Williams, Jr.'s account. This issue presents a genuine issue of material fact which bars Officer Smith's summary judgment on this element.

B.

For the next element, Williams, Jr. must show that Officer Smith lacked probable cause to both arrest Williams, Jr. and to initiate the criminal proceedings against him. *Sykes*, 62 F.3d at 310-11. To determine whether probable cause existed, courts must view "the totality of the circumstances at the time of the Plaintiffs' arrest and through the time that the criminal proceeding against them commenced." *Id.* at 311. An officer has probable cause when "the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed." *Henry v. United States*, 361 U.S. 98, 102 (1959).

Whether probable cause exists here depends on whose version of events the factfinder adopts. The substance of the conversations between these two individuals, and the nature of their tones and body language, have a real and significant impact on whether Officer Smith indeed had a reasonable belief that Williams, Jr. was committing the offense of Obstructing Governmental Functions as defined in Kentucky law.[1] "'When no material dispute of fact exists, probable cause determinations are legal determinations that should be made' by the court. But, '[i]f disputed factual issues underlying probable cause exist, those issues must be submitted to a jury for the jury to determine the appropriate facts.'" *Alman v. Reed*, -- F.3d ----, 2013 WL 64370, at *6 (6th Cir. Jan. 7, 2013)(quoting *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005)).

---

[1] Pursuant to Kentucky statute, "A person is guilty of obstructing governmental operations when he intentionally obstructs, impairs or hinders the performance of a governmental function by using or threatening to use violence, force or physical interference." KRS § 519.020.

9

The video evidence submitted to the Court does not resolve this dispute. Both sides have presented reasonable accounts of the events that are factually at odds. A reasonable jury could believe Williams, Jr.'s version. Consequently, the Court is inclined to let a jury determine the appropriate facts that serve as the foundation for the existence of probable cause.

C.

Next Williams, Jr. must prove that he suffered a deprivation of liberty as understood under the Fourth Amendment, apart from the initial seizure. Officer Smith does not contest that a deprivation of liberty occurred, but the Court finds that this element warrants some discussion.

The damages suffered as a result of the acts underlying a malicious prosecution must have subjected "the aggrieved individual to a deprivation of constitutional dimension." *Dean v. Earle*, 866 F.Supp. 336, 340 (W.D. Ky. 1994)(citing *Dunn v. Tenn.*, 697 F.2d 121, 125 (6th Cir. 1982)). Therefore, where the plaintiffs were not arrested or incarcerated, *see Rogers v. O'Donnell*, 2012 WL 1831242, at *1 (E.D. Ky. May 18, 2012), and where all charges were dropped against a plaintiff who was never arrested, *see Cheolas v. City of Harper Woods*, 467 F. App'x 374, 378 (6th Cir. 2012), courts found that the plaintiff did not suffer a deprivation of liberty sufficient to satisfy this element of a malicious prosecution claim.

However, district courts have found a deprivation sufficient to satisfy this malicious prosecution element where the plaintiff was arrested, taken to jail, and arraigned, *see Guerra v. Rodriguez*, 2012 WL 208083, at *10 (E.D. Ky. Jan. 24, 2012), or arrested, booked, and released upon bond after a pretrial hearing, *Amine v. King*, 2011 WL 4387229, at * 12 (E.D. Mich. Sept. 21, 2011). One district court found that the plaintiff suffered a Fourth Amendment deprivation of liberty without ever being transported to or booked at the police station. *See Gordon v. Jones*, 2011 WL

847926, at *8 (W.D. Ky. Mar. 8, 2011)(holding that because the police officers tackled and handcuffed plaintiff twice and then escorted plaintiff to the hospital to receive treatments for the injuries resulting from this incident, the plaintiff satisfied the deprivation of liberty element of the malicious prosecution claim even though the plaintiff only received a citation for his alleged unlawful conduct).

It is unclear from the record exactly what transpired between the time when Officer Smith transported Williams, Jr. to the police station and when the prosecution began. However, based on the information the Court presently possesses, the situation *sub judice* is more similar to the *Guerra* and *Amine* line of cases. First, the initial seizure probably occurred when Officer Smith ordered Williams, Jr. to face the wall, handcuffed him, and placed him under arrest outside Phat's. Certainly, seizure occurred when Officer Smith led Williams, Jr. to his police car and forced him in the backseat. Next, Officer Smith removed Williams, Jr. from the location of his business and transported him to the police station. Finally, prosecutors did not proceed on the remaining obstruction charge for two years, making Williams, Jr. endure a relatively long period of time to obtain a resolution of the charge and suffer the deprivation of liberty inherent in defending oneself on criminal charges. The Court finds that these undisputed facts present enough evidence to show a deprivation of liberty as understood under the Fourth Amendment apart from the initial seizure.

In sum, genuine issues of material fact remain as to two of the elements of the malicious prosecution claim. The other three elements are resolved in Plaintiffs' favor. Because Officer Smith fails to show that a constitutional violation did not occur, he is not entitled to federal qualified immunity at this time.

IV.

Under Kentucky law, official immunity "is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. It rests not on the status or title of the officer or employee, but on the function performed." *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001). For officers sued in their individual capacities, qualified immunity attaches once the officer proves three elements. First, the actions taken must be discretionary. Second, the actions taken must have been within Officer Smith's scope of authority. Finally, the actions must have been taken in good faith. *Id.* at 522. The parties do not dispute that any of Officer Smith's relevant actions were discretionary. Moreover, because decisions to arrest and prosecute are inherently within a police officer's general responsibilities, the alleged unlawful acts were within Officer Smith's scope of authority. Therefore, the good faith requirement will determine qualified immunity.

A.

Kentucky courts have analyzed the good faith requirement inversely, as proof of the absence of bad faith. *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006)("'Good faith,' however, is somewhat of a misnomer, as the proof is really of bad faith. In fact, in most cases, 'good faith' is just a presumption that exists absent evidence of 'bad faith'."). Under Kentucky law, bad faith can "be predicated on a violation of [causally related] constitutional, statutory, or other clearly established right which a person in a public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness." *Yanero*, 65 S.W.3d at 523. Under Kentucky law, one can also prove bad faith "if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Id.* Thus, Kentucky law adopts both an objective and a subjective approach to qualified immunity, whereas

12

the federal law only provides immunity where the official objectively violated a person's clearly-established rights.

Williams, Jr. argues that Officer Smith acted in bad faith both objectively and subjectively. Objectively, he argues that Officer Smith violated his clearly-established right to be free from prosecution without probable cause; subjectively, he contends that Officer Smith acted with a corrupt motive. The Court first examines whether Officer Smith acted in bad faith objectively by analyzing the elements of the tort of malicious prosecution under Kentucky law.

"In spite of the general disfavor, [Kentucky] case law recognizes that malicious prosecution claims are necessary to deter persons from procuring the arrest of another maliciously and without probable cause." *Hunt v. Lawson*, 2008 WL 4691052, at *5 (Ky. Oct. 23, 2008). However, because of this general disfavor, the complaining party "must strictly comply with the prerequisites of maintaining an action for malicious prosecution." *Prewitt v. Sexton*, 777 S.W.2d 891, 895 (Ky. 1989). There are six basic elements necessary to maintain a malicious prosecution claim.

> They are: (1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative disciplinary proceedings, (2) by, or at the instance, of the [officer], (3) the termination of such proceedings in [plaintiff's] favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceedings, and (6) the suffering of damage as a result of the proceeding.

*Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981). Both sides concede that a civil proceeding was instigated against Williams, Jr., and that the proceeding terminated in his favor. The Court will examine the other four elements.

B.

The test for determining that the proceedings against plaintiff were "by, or at the instance, of the officer", is whether the defendant "sets the machinery of the law in motion." *McMaster v. Cabinet for Human Res.,* 824 F.2d 518, 521 (6th Cir. 1987)(quoting *First Nat'l Bank of Mayfield v. Gardner*, 376 S.W.2d 311, 316 (Ky. 1964)). "A wide variety of conduct may constitute the 'institution,' 'initiation,' or 'instigation' of proceedings, both under Kentucky law and the common law generally." *Id.* "The initiation of a criminal proceeding generally occurs upon either the actual arrest of a person, the return of an indictment, the issuance of an arrest warrant, or a summons to appear and answer criminal charges." *Johnson v. St. Claire Med. Ctr., Inc.*, 2003 WL 22149386, at *2 (Ky. Ct. App. Sept. 19, 2003).

Construing Kentucky law, the Sixth Circuit determined that the plaintiff could prevail on her malicious prosecution claim where the officer decided to make the arrest and to charge the plaintiff with felonies instead of misdemeanors. *Arnold v. Wilder*, 657 F.3d 353, 366 (6th Cir. 2011). In *Arnold*, the defense attorney conceded this element, declaring the police officer instigated the proceedings when he made the arrest and filled out the uniform citation. *Id.* Similarly, where the officer issued a criminal citation to the plaintiff, a federal court analyzing Kentucky malicious prosecution elements determined that plaintiff proved this element. *Meogrossi v. Aubrey*, 2011 WL 1235063, at *15 (W.D. Ky. Mar. 31, 2011). On the other hand, the Sixth Circuit, again construing Kentucky law, found that the officers did not participate in the initiation of the proceedings against the plaintiff where the officers merely conducted searches of the residence, and did not testify before the grand jury. *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003).

The facts surrounding Williams, Jr.'s arrest and prosecution are more closely related to the cases finding that the officer "initiated" the criminal proceedings. The case law outlined above

14

seems to indicate that "initiation" occurs where the officer made the arrest and detailed potential offenses against the plaintiff. Here, Officer Smith was more involved than just the arrest and citation, because he participated in meetings between the prosecutor and Williams, Jr. and was the government's sole witness at Williams, Jr.'s trial. It is clear, therefore, that Officer Smith's action could amount to "initiation" of the proceedings against Williams, Jr. under Kentucky law.

C.

The Court will consider the malice and lack of probable cause elements together, because under Kentucky law, "malice can be inferred from a lack of probable cause." *Massey v. McKinley*, 690 S.W.2d 131, 134 (Ky. 1985). Thus the Court will find malice, defined as "the intentional doing of a wrongful act to the injury of another, with an evil or unlawful motive or purpose," where the Court determines that the officer lacked probable cause in the arrest or prosecution of the plaintiff. *Johnson v. Baker*, 2009 WL 3514576, at * 3 (W.D. Ky. Oct. 29, 2009)(quoting *Stearns Coal Co. v. Johnson*, 37 S.W.2d 38, 40 (Ky. 1931)).

"Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Commonwealth v. Jones*, 217 S.W.3d 190, 196 (Ky. 2007)(quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). To decide whether probable cause exists, courts must examine both "the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or probable cause." *Id.* (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Generally speaking, the probable cause determination is a question of law for the court to decide. *Isham v. ABF Freight Sys. Inc.*, 2006 WL 2641398, at *8 (Ky. Ct. App. Sept. 15, 2006). However, where the court determines

that under a certain reasonable reading of the facts, probable cause was lacking, and the parties dispute those facts, then those fact questions must be submitted to the jury. *Prewitt*, 777 S.W.2d at 895.

As discussed above in the federal law context, based on a careful review of the record, the Court finds that the determination as to whether probable cause exists depends on what set of facts the jury would believe. Therefore, the Defendant has not shown an absence of a genuine issue of material fact as to the probable cause element. Likewise, the question of malice remains undecided.

D.

Williams, Jr. must finally show that he suffered damages as a result of the prosecution for his malicious prosecution claim to survive. Courts seem to allow a wide range of damages to satisfy this element. In *Raine v. Drasin*, the seminal Kentucky malicious prosecution case, the Court recognized recovery for the following types of damages: "mortification, humiliation, injury to the reputation, character and health, mental suffering, and general impairment of social and mercantile standing." *Raine*, 621 S.W.2d at 900. Although Officer Smith does not contest this element, the Court finds that sufficient facts have been asserted or established that would support a conclusion that Williams, Jr. suffered several of these damages during the course of his arrest and trial. Therefore, Officer Smith has failed to prove that a genuine issue of material fact does not exist as to this element or that the element would be resolved in his favor.

Because Officer Smith cannot prove that he did not violate Williams, Jr.'s clearly-established rights, Officer Smith's claim to qualified official immunity on the Kentucky malicious prosecution claim must be denied. Moreover, because the Court has determined that some of the elements of a malicious prosecution claim fall in Williams, Jr.'s favor, and the remaining elements are subject

to extant genuine issues of material fact, Officer Smith is not entitled to summary judgment.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant, Kevin Smith's Motion for Summary Judgment on the state and federal claims of malicious prosecution is DENIED.

cc: Counsel of Record