UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-00491-JGH

PHAT'S BAR & GRILL, LLC, et al.,                                          PLAINTIFFS

V.

LOUISVILLE JEFFERSON COUNTY
METRO GOVERNMENT, et al.,                                                 DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Bert Williams, Jr., Bert Williams, Sr. and Phat's Bar & Grill (collectively, "Plaintiffs"), brought suit against Louisville Jefferson County Metro Government ("Louisville Metro") and more than twenty of its police officers (collectively, "Defendants") alleging a number of state and federal constitutional and statutory violations. Many of the original claims have been dismissed. The Court now considers Louisville Metro's motion for summary judgment on the federal malicious prosecution claims pending against it. For the reasons that follow, this Court grants the motion in part and denies the motion in part.

I.

On April 9, 2007, Plaintiffs' former attorney, Douglas Weaver, met with Louisville Deputy Mayor, William Summers, to discuss the worsening relationship between Plaintiffs and the Louisville Metro Police Department ("LMPD") that had arisen as a result of several organized raids of Phat's Bar & Grill ("Phat's"). Weaver memorialized the meeting in a letter he sent to Deputy Mayor Summers the same day. The following week, Weaver met with the LMPD Chief Robert White, Colonel Philip Turner, Major Robert Johnson, and LMPD's legal representative to further

discuss the problems plaguing this relationship. Days later, on April 19, 2007, Police Officer Kevin Smith responded to a 911 call from a woman claiming to have been assaulted and robbed at Phat's, a visit which culminated in Williams, Jr.'s arrest. Three of the four charges brought against him were summarily dismissed. The Jefferson County Attorney's Office prosecuted Williams, Jr. on the remaining charge, Obstructing Governmental Functions. A jury acquitted him of the offense on June 6, 2009, more than two years after the initial arrest.

On April 20, 2008, the LMPD SWAT Team executed a raid on Phat's, pursuant to what police officials called Operation Purple Rain. That raid led to the arrest of Williams, Sr., who was charged with three different criminal violations. After a probable cause preliminary hearing sent the case to the Grand Jury on October 21, 2008, the Grand Jury returned a "No True Bill" as to all three charges on June 29, 2009.

Plaintiffs filed this suit on June 7, 2010. On February 8, 2011, this Court entered an Order dismissing all state law claims against Louisville Metro and all federal claims against all Defendants, with the exception of the malicious prosecution claim. The Order is a bit unclear as to whether the state law malicious prosecution claim was also dismissed against Louisville Metro. The Court now reaffirms that all state law claims against Louisville Metro, including the state law malicious prosecution claim, were dismissed, because merged urban-county governments are entitled to sovereign immunity under Kentucky law. *Jewish Hosp. Healthcare Servs., Inc. v. Louisville-Jefferson Cnty. Metro Gov't*, 270 S.W.3d 904, 907 (Ky. Ct. App. 2008).

Therefore, the only remaining claims against Louisville Metro are those of Williams, Jr. and Williams, Sr. under federal law for malicious prosecution. Louisville Metro moves for summary judgment on these claims. Summary judgment is appropriate where "there is no genuine issue as

2

to any material fact." FED. R. CIV. P. 56(c). The moving party bears the initial burden of proving, from the material facts viewed in the light most favorable to the nonmoving party, that there are no genuine issues of material fact. *Matsushita Electric Indus. Co., LTD. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). Where the moving party has been successful in this regard, the nonmoving party must "designate 'specific facts showing that there is a genuine issue for trial'" to overcome summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)(quoting FED. R. CIV. P. 56(c)).

## II.

Plaintiffs' federal malicious prosecution claim is brought pursuant to 42 U.S.C. § 1983, under which municipalities are considered persons. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978). To proceed on a § 1983 claim, Plaintiffs must satisfy a two-part test. First, the actor must have caused a violation of another's constitutional rights. *Id.* at 692. Second, the actor's conduct must have been brought according to some government policy. *Id.* Therefore, municipalities cannot be held liable for the acts of its officials on a *respondeat superior* theory. *Id.* at 693.

Louisville Metro makes a single argument as to the first prong–that should the Court determine that the operative actors are not liable for any unconstitutional activity, then a claim cannot proceed against Louisville Metro. *See Monday v. Oullette*, 118 F.3d 1099, 1105 (6th Cir. 1997). However, this Court has already determined that Williams, Jr. may proceed on his federal and state malicious prosecution claims against Officer Smith. This Court has yet to decide whether Williams, Sr.'s claims for malicious prosecution can withstand summary judgment *against any of the remaining defendants*. However, from a review of the record, a reasonable jury could find that

Williams, Sr. was prosecuted without probable cause.[1] Therefore, as to the prosecutions of both Williams, Jr. and Williams, Sr., Defendants have failed to prove an absence of a constitutional violation. Louisville Metro makes no further argument on the constitutional violation element of a § 1983 claim. Therefore, Plaintiffs have satisfied the first element of the *Monell* test at the summary judgment stage. The Court now turns to the more complex, second element.

III.

Here, Plaintiffs must show that "a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional right." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). A policy is "a policy statement, ordinance, regulation or decision officially adopted or promulgated." *Monell*, 436 U.S. at 690. A custom or practice is more difficult to prove because it "has not received formal approval through the body's official decision making channels." *Id.* A plaintiff "may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007).

In either case, Plaintiffs "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [plaintiff's] particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). The particular injury here is malicious prosecution, which under federal law requires proof of the following:

---

[1] It appears that Williams, Sr. was charged with two offenses due to one or several police officers misidentifying him as the man in the DJ room who hid a crack pipe from law enforcement authorities during the raid. When testifying at the probable cause hearing for the government, one police officer affirmatively identified Williams, Sr. as the individual in the DJ room despite the fact that the prosecution had in its possession the security tapes from the raid that showed that Williams, Sr. was not the culprit in the DJ room. Nevertheless, whether Plaintiffs have alleged sufficient facts and law to support a claim for malicious prosecution against the Defendants in this case has yet to be decided.

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)(internal citations and quotations omitted).

Plaintiffs present four policies or customs that they allege caused their malicious prosecution. The Court must examine each one carefully and separately.

A.

Plaintiffs first contend that LMPD's custom of destroying video evidence when conducting raids caused Plaintiffs to incur malicious prosecution. Specifically, Plaintiffs point to the SWAT Team's raid of Phat's, during which members of the SWAT Team either blocked security camera lenses, disenabled the cameras from functioning, or confiscated the tapes from the security cameras. Although Plaintiffs seem to envelop this policy within the policy to put Phat's out of business as discussed below, the two are distinct.

In the deposition of Defendant J.T. Duncan, a lieutenant for the LMPD who participated in the April 20, 2008 Phat's raid, Duncan testified that it is "pretty much standard procedure to secure any type of video system or anything like that." Depo. of J.T. Duncan, ECF 58, pp. 41-42. Duncan continued to declare that he was trained to perform this task when executing warrants, a procedure he assumed had been committed to writing somewhere. *Id.* at 42 Thus, Plaintiffs have shown sufficient evidence to warrant a reasonable juror to determine both that a policy existed and that the policy is connected to the LMPD. However, Plaintiffs' § 1983 claim as to this policy fails for two reasons.

First, the Plaintiffs have not shown that the LMPD's policy actually involved destroying evidence. Pursuant to state court order, Louisville Metro turned over videos that the SWAT Team removed from those cameras that remained operational during the raid, and Plaintiffs used those tapes to impeach at least one Defendant at his deposition. Moreover, Plaintiffs assert that the Defendants powered down or covered up cameras during the raid. This is not destruction of evidence, and Plaintiffs provide no support for the contention that the LMPD has the policy or custom of destroying evidence.

If, however, Plaintiffs really intend to allege that the tampering with security cameras is the injurious policy or custom, Plaintiffs' argument fails for a second reason. Plaintiffs cannot reasonably argue that this policy or custom caused their malicious prosecutions. Federal malicious prosecution allows recovery for "wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006). To connect tampering with security cameras to malicious prosecution, Plaintiffs must show that Louisville Metro adopted the policy to further the goal of prosecuting these Plaintiffs and others without probable cause. Plaintiffs have not shown that the policy, if it existed, was adopted for that purpose, only that it may have aided their plans in this instance.

In sum, Louisville Metro investigated and prosecuted Plaintiffs with or without probable cause irrespective of whether the security cameras recorded the raid. Therefore, the policy was not the "moving force" behind the constitutional injuries at issue. For these reasons, this policy or custom cannot sustain a § 1983 action against Louisville Metro.[2]

---

[2] Lieutenant Duncan explained that the SWAT Team secured the security system for "[o]fficer safety reasons. To protect the identity of undercover officers or informants." Depo. of J.T. Duncan, ECF 58, pp.42. However, whether this policy itself is constitutional is not at issue in this case, which is now limited in scope to the malicious prosecution and intentional interference with business relationship claims.

B.

Second, Plaintiffs allege that Louisville Metro has a policy or custom of refusing to dismiss meritless charges without a probable cause stipulation. Louisville Metro is correct that release-dismissal agreements can be valid. *See Cady v. Arenac Cnty.*, 574 F.3d 334, 339-40 (6th Cir. 2009)(stating that in response to *Town of Newton v. Rumery*, 480 U.S. 386 (1987), "numerous cases from this circuit . . . have established the validity of release-dismissal agreements as 'legitimate criminal justice tools'"). These agreements are only valid where "obtaining the release was motived by an independent, legitimate criminal justice objective," including "in situations where police misconduct is alleged, but the prosecutor is genuinely unable to ascertain the truth surrounding the allegation." *Coughlen v. Coots*, 5 F.3d 970, 975 (6th Cir. 1993). The Sixth Circuit even stated that a release-dismissal agreement would be enforceable "where the strength of evidence of criminal conduct is doubtful even though charges were filed in good faith." *Id.* However, Plaintiffs assert that the LMPD policy seeks to obtain release-dismissal agreements where the charges are meritless, and presumably made in bad faith.

Plaintiffs cite Williams, Jr.'s case as emblematic of this policy. Evidently, prosecutors offered to dismiss his charges in consideration for a probable cause stipulation, which Williams, Jr. refused. Because of this, Williams, Jr. claims that Louisville Metro decided to prosecute Williams, Jr. on the unsubstantiated charge of Obstructing Governmental Functions, for which he was acquitted. As to this policy, Plaintiffs fail to overcome summary judgment for two reasons.

First, Plaintiffs cannot satisfy that a policy or custom actually existed. Plaintiffs only show that in this one instance, Williams, Jr. refused to stipulate to probable cause and the prosecuting decisionmakers decided to prosecute. Beyond mere allegations, Plaintiffs also fail to show that the

7

motivation for prosecuting Williams, Jr. was a direct result of the refusal to stipulate to probable cause. However likely or correct Plaintiffs may be in this one case, they have not satisfied their burden of providing sufficient evidence that a reasonable juror would find that Defendants utilize this strategy as a policy when meritless charges are brought, an admittedly tough evidential burden. Second, Plaintiffs do not attribute this policy to any actor other than the particular prosecutors in Williams, Jr. and Williams, Sr.'s cases, who Plaintiffs do not name in this suit, and perhaps Officer Smith and Officer Pearson. Municipalities cannot be held liable under § 1983 under a *respondeat superior* theory. *Monell*, 436 U.S. at 690. For these reasons, Louisville Metro is entitled to summary judgment as to this alleged policy.

C.

Next, Plaintiffs say that Louisville Metro's failure to train or otherwise instruct its officers caused their constitutional injuries. The Supreme Court recognized that the limited circumstances "in which an allegation of a 'failure to train' can be the basis for liability under § 1983" are "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387-88 (1989).

As stated, Plaintiffs argue that Louisville Metro's failure to train resulted in deliberate indifference in two ways, corresponding to two situations that the Sixth Circuit recognized as proper § 1983 failure to train claims in *Brown v. Shaner*, 172 F.3d 927 (6th Cir. 1999). "One is failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction." *Id.* at 931. Plaintiffs first argue that Louisville Metro failed to train its officers of the foreseeable constitutional violations that would ensue as a result of Defendants' wrongful harassment of Phat's employees and patrons. Beyond mere allegations, Plaintiffs present no

evidence to show that the LMPD failed to adequately train the Police Officer Defendants regarding the manner in which they interact with citizens—and specifically Phat's patrons, employees and owners—to prevent constitutional violations. Aside from statements written by Plaintiffs' former counsel alleging constitutional violations, Plaintiffs also have provided no actual proof that prior raids on Phat's gave rise to constitutional violations.

The second failure to train situation that the Sixth Circuit asserts could amount to deliberate indifference is "where the city fails to act in response to repeated complaints of constitutional violations by its officers." *Id.* Plaintiffs cite the two meetings between Louisville Metro officials and their former attorney Weaver, and the letter Weaver wrote to Deputy Mayor Summers detailing the first meeting, as evidence that Plaintiffs repeatedly complained to Louisville Metro of the constitutional violations its officials imparted on Plaintiffs and their customers. Plaintiffs allege, and Defendants do not dispute, that after the second meeting, Louisville Metro officials promised to follow up with Plaintiffs to resolve the issue. During the next interaction less than a week later, however, Officer Kevin Smith responded to a 911 call at Phat's and eventually arrested Williams, Jr. on four different charges. Based on a review of the record, the Court agrees that the Defendants received repeated complaints of unconstitutional law enforcement action brought to bear on Plaintiffs and that Defendants failed to respond to these complaints.

However, Plaintiffs "must still prove that the deficiency in training actually caused the police officers' indifference" to their constitutional rights infringed here. *Harris*, 489 U.S. at 391. Plaintiffs have failed to do this. There is simply no causal link between the failure to respond to complaints of LMPD wrongful conduct and Williams, Jr. and Williams, Sr.'s prosecutions without

9

probable cause. Both may be unlawful activities, but the causal relationship is just not present. Accordingly, Plaintiffs' failure to train arguments fail as a matter of law.

D.

Plaintiffs' primary and overall theme is that Louisville Metro engaged in a course of conduct, custom or practice to put Phat's out of business by attacking Plaintiffs' liquor license by bringing criminal charges against them. The quite serious legal question presented is whether such circumstances can constitute a custom or practice for purpose of sustaining a § 1983 claim against a municipality.

1.

So far as the underlying facts are concerned, the Court believes that a jury could reasonably believe the following: police officers on many occasions visited Phat's and questioned employees and patrons in a manner which could amount to harassment; LMPD arrested Williams, Jr. and the Jefferson County Attorney's Office prosecuted him; Operation Purple Rain culminated in a raid of Phat's; and Williams Sr. was arrested during it. This Court has already determined that Officer Smith may have arrested and played a role in Williams, Jr.'s prosecution without probable cause. In early 2009, Phat's voluntarily surrendered its liquor license, apparently to avoid the oftentimes permanent repercussions resulting from the Kentucky Alcohol Beverage Control Board revoking its license. This, Plaintiffs argue, was the ultimate goal of Operation Purple Rain and fully effectuated the Louisville Metro policy. Taking all these facts together, the Court finds, as it similarly found with regards to the malicious prosecution claim against Officer Smith, that Plaintiffs have presented enough evidence for a reasonable juror to believe that Louisville Metro wanted to

put Phat's out of business by subjecting its owners to criminal charges, and implemented Operation Purple Rain to do it.

2.

Normally, a custom or practice suggests actions taken in common circumstances regardless of the party affected. Here, the practice effects only Phat's, rather than all strip clubs or even all suspected illegal clubs. The Sixth Circuit has provided little practical guidance for such circumstances, other than to state that "[i]n appropriate circumstances, a single act may rise to the level of policy or custom." *Pusey v. City of Youngstown*, 11 F.3d 652, 659 (6th Cir. 1993). For this to be so, however, the course of conduct culminating in the unconstitutional act must constitute a custom for purposes of § 1983. This occurs only when "'such practices of state officials [are] so permanent and well-settled' as to constitute law." *Id.* (quoting *Monell*, 436 U.S. at 691).

Recently, the District Court for the Southern District of Ohio, adopting similar logic, determined that "it was reasonable to conclude that [*Monell*'s] teachings are equally applicable to a specific policy directed at just one individual, as long as the pleaded facts support the inference that unconstitutional action was taken against the individual pursuant to such policy." *Hutchinson v. Cuyahoga Cnty. Bd. Of Cnty. Comm'rs*, 2011 WL 1563874, at *9 (S.D. Ohio Apr. 25, 2011)(quoting *Turpin v. Mailet*, 619 F.2d 196, 202 n.7 (2d Cir. 1980)). These cases present a reasonable explanation of the standard for municipal liability under § 1983. Based on this rationale, a plan such as suggested here *could* constitute a custom or practice as defined in *Monell*. Therefore, Plaintiffs have provided sufficient evidence to warrant submission of the federal malicious prosecution claim against Louisville Metro, arising out of this policy only, to a jury.

The legal standard here is not easily met. And, the Court has yet to consider the precise legal instructions that will be appropriate for trial. Moreover, the case will be far from easy because Plaintiffs must prove by circumstantial evidence that the course of conduct became a governmental custom, not merely an isolated event conducted by individual rogue officers.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant Louisville Jefferson County Metro Government's Motion for Summary Judgment is SUSTAINED in part and all claims against it are DISMISSED WITH PREJUDICE, except Williams, Jr. and Williams Sr.'s federal claims for malicious prosecution against Louisville Metro arising from an alleged established custom of harassing Phat's out of business.

cc: Counsel of Record